UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

FILED

RICKENSON MILBIN §
    Petitioner §

CASE NO.  3:02CV2227 (JBA)

vs. §

JOHN ASHCROFT, ET AL. §
    Respondents. §
                §

**Petitioner's Motion To Amend And Supplement His Writ Of
Habeas Corpus Filed Pursuant to 28 USC § 2241**

NOW COMES, Petitioner Rickenson Milbin, pro-se,
and hereby respectfully moves this Honorable Court to amend
and supplement his writ of habeas corpus to present the
Court with additional facts which will support a grant of the
instant habeas writ as follows:

Petitioner presents that he has exhausted the
administrative remedies as required by the Court in response
to the Government's position that he has not exhausted his
administrative remedies. See BIA Decision of November 3, 2003,
denying and dismissing Petitioner's appeal attached hereto
as exhibit **1**.

Petitioner further charges that the decision of the
BIA in rejecting the Second Circuit Court's decision in
**Chrzanoski v. Ashcroft**, 327 F.3d 188 (2nd Cir. 2003) amounts
to a violation of the Equal Protection Law and comp of court.
Petitioner attaches a copy of the **Chrzanoski v. Ashcroft,**
decision cited as 327 F.3d 188 (2nd Cir. 2003). See exhibit **2**.

-1-

DENIED as moot. It is SO ORDERED

Janet Bond Arterton, U.S.D.J.

Petitioner further avers that his conviction for third degree assault in violation of Con.Gen.Stat. §53a-61 is not a crime of violence in light of **Chrzanoski v. Ashcroft,** supra, which states in relevant part: "Because use of force is not an element (whether statutorily defined or otherwise of section 53a-61(a)(1), we conclude third degree intentional assault under Connecticut law is not [for] a crime of violence under section 16(a)."

Moreover, the BIA erred in applying **United States v. Shelton,** 325 553, 557-61 (5th Cir. 2003) (following the law of the Circuit in determining what constitutes a crime of violence) citing **Matter of Cerna,** 20 I & N Dec. 399-401 (BIA 1991) (declining to follow authority from one Circuit when in another circuit).

The problem presented here is that the Second Circuit control's **Milbin's** case because he was convicted in Connecticut and the Second Circuit has spoken in **Chrzanoski,** and as the Fifth Circuit stated in **United States v. Hernandez,** 251 F.3d 505 (5th Cir.); **U.S. v. Hinojosa,** 130 F.3d 691 (5th Cir. 1997) (a determination of whether an offense is a "felony" for purposes of 18 USC § 924(c)(2) (2000) depends on the classification of the offense under the law of the convicting jurisdiction). **Matter of Yanez,** 23 I & N Dec. 390 (BIA 2000).

Therefore, the BIA erred in its decision which amounts to violation of due process and equal protection of the law,

-2-

inasmuch the Board's decision must be vacated in recognition of the fact that Petitioner is not an aggravated felon. Petitioner's offense is not a crime of violence under § 16(a). See **Chrzanoski v. Ashcroft**, (2nd Cir. 2003)

**Wherefore**, Petitioner prays the Honorable Court to recognize the precedent issued in **Chrzanoski**, 327 F.3d 188 (2nd Cir. 2003), and find that **Milbin's** conviction for assault 3rd in violation of Con. Gen. Stat. § 53a-61 is not for a crime of violence to constitute an aggravated felony. The Court may further grant any such other relief as to the Court deems just and proper.

Respectfully submitted,

Dated: Nov. 24, 2003.

Rickenson Milbin
18097-265
FDC-OAK
P.O. Box 5010
Oakdale, La 71463

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of November, 2003, I served a true and correct copy of the within 'Petitioner's Motion to Amend and Supplement His Writ of Habeas Corpus' upon opposing counsel via U.S. Mail, First Class, Postage Prepaid, and addressed to:

Assistant U.S. Attorney
New Haven, Connecticut

Rickenson Milbin

-3-

SEE * EXHIBIT * " 1 "

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:   A41 056 483 - Oakdale

Date:   NOV - 3 2003

In re:  MILBIN RICKENSON a.k.a. Rickson Milbin

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:   Pro se

ON BEHALF OF DHS:   Glenda M. Raborn
                    Assistant District Counsel

CHARGE:

Notice:  Sec.   237(a)(2)(A)(iii), I&N Act [8 U.S.C. § 1227(a)(2)(A)(iii)] -
                Convicted of aggravated felony

APPLICATION:  Termination

ORDER:

PER CURIAM.  The appeal is dismissed.[1]  The record supports the Immigration Judge's conclusion that the respondent was not re-sentenced to a term of less than a year for his conviction of the Connecticut offense of assault in the third degree (Tr. at 18-21; Exh. A at Attachment; Transcript of probation revocation proceedings).

Furthermore, to the extent the respondent seeks a remand in light of *Chrzanoski v. Ashcroft*, 327 F.3d 188 (2d Cir. 2003), the motion is denied.  As the respondent's conviction for third degree assault requires bodily injury, it includes as an element the use of physical force and, therefore, the respondent's conviction is a crime of violence.  *See United States v. Shelton*, 325 F.3d 553, 557-561 (5th Cir. 2003); *see also Matter of Martin*, 23 I&N Dec. 491, 492 (BIA 2002) (following the law of the circuit in determining what constitutes a crime of violence); *Matter of Cerna*, 20 I&N Dec. 399, 401 (BIA 1991) (declining to follow authority from one circuit when in another circuit).  Because

---

[1] The respondent's request for oral argument is denied.  *See* 8 C.F.R. § 1003.1(e) (2003).  The respondent's appellate fee waiver request is granted.  *See* 8 C.F.R. § 1003.8(c).

A41 056 483

the respondent was convicted of a crime of violence for which he received a sentence of at least 1 year of imprisonment, the respondent is an alien convicted of an aggravated felony pursuant to section 101(a)(43)(F) of the Act. The respondent raises no other relief. Accordingly, the appeal is dismissed.

FOR THE BOARD

2

SEE * EXHIBIT * " 2 "

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

―――――――――

August Term, 2002

Argued: February 27, 2003

Decided: April 22, 2003
Errata Filed: May 1, 2003

Docket No. 02-2531

―――――――――

JAROSLAW CHRZANOSKI[1],

*Petitioner-Appellant,*

—v.—

JOHN ASHCROFT, US Attorney General,

*Respondent-Appellee.*

―――――――――

B e f o r e :

STRAUB, KATZMANN, AND RAGGI, *Circuit Judges.*

―――――――――

Petitioner appeals the judgment entered by the United States District Court for the

District of Connecticut (Squatrito, *J.*).  The District Court denied the petition for a writ of habeas

corpus brought pursuant to 28 U.S.C. § 2241, reasoning that because petitioner's conviction of

―――――――――

[1]Although the parties spell petitioner's name "Chrzanowski," we have adopted the
spelling indicated in the Court's records.

1

third degree assault in violation of section 53a-61 of the Connecticut General Statutes constituted a crime of violence as defined in 18 U.S.C. § 16(a), petitioner was removable as an aggravated felon under 8 U.S.C. § 1227(a)(2)(A)(iii).

      Reversed and remanded.

------------

<div style="margin-left:30%">

KATHERINE R. GOLDSTEIN (Paul A. Engelmayer, *on the brief*),

Wilmer, Cutler & Pickering, New York, New York,

Michael G. Moore, Springfield, Massachusetts, *of counsel*,

*for Petitioner-Appellant Jaroslaw Chrzanoski.*


JOHN B. HUGHES, Assistant United States Attorney (Jeffrey A.

Meyer, Assistant United States Attorney, *on the brief*), for

Kevin J. O'Connor, United States Attorney, District of

Connecticut, New Haven, Connecticut, *for Respondent-*

*Appellee John D. Ashcroft.*

</div>

------------

KATZMANN, *Circuit Judge*:

      This appeal arises from the denial by the United States District Court for the District of Connecticut (Squatrito, *J.*) of a petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2241 against respondent John Ashcroft, Attorney General of the United States ("the government"). The District Court denied the petition, reasoning that because petitioner's

conviction of third degree assault in violation of section 53a-61 of the Connecticut General

Statutes ("section 53a-61") constituted a crime of violence as defined in 18 U.S.C. § 16(a) ("§

16(a)"), petitioner was removable as an aggravated felon under 8 U.S.C. § 1227(a)(2)(A)(iii).

For the reasons that follow, we reverse the judgment of the District Court and remand with

directions to grant the petition.

<div align="center">**Facts and Procedural Background**</div>

Petitioner Jaroslaw Chrzanoski ("petitioner" or "Chrzanoski") is a citizen of Poland and a

lawful permanent resident of the United States. On October 16, 1996, he pled guilty to assault in

the third degree in violation of section 53a-61 of the Connecticut General Statutes, a Class A

misdemeanor, and was sentenced to a one-year suspended sentence and three years' probation.[2]

In May 2001, the Immigration and Naturalization Service ("INS") commenced removal

proceedings against petitioner, alleging that because he had been convicted of an "aggravated

felony," he was removable pursuant to section 237(a)(2)(A)(iii) of the Immigration and

Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii) (providing that "[a]ny alien who is

convicted of an aggravated felony at any time after admission is deportable"). An immigration

judge ("IJ") determined that intentional assault in the third degree under Connecticut law

---

[2]In fact, petitioner pled guilty on October 16, 1996 to four misdemeanor charges: two counts of assault in the third degree in violation of section 53a-61 of the Connecticut General Statutes, one count of interfering with a police officer in violation of section 53a-167a of the Connecticut General Statutes, and one count of driving under the influence of alcohol in violation of section 14-227a of the Connecticut General Statutes. He was sentenced to concurrent one-year terms of incarceration for the two assaults, a consecutive one-year term on the interference charge, and a consecutive one-year term for driving while under the influence, all of which were suspended, with Chrzanoski placed on three years' probation.

<div align="center">3</div>

included as an element the use of force. Thus, the IJ found that petitioner's conviction constituted a crime of violence under § 16(a) (defining crime of violence as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another") and, therefore, was an aggravated felony as defined in section 101(a)(43)(F) of the INA, 8 U.S.C. § 1101(a)(43)(F) (defining aggravated felony as "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [sic] at least one year[3]"). The IJ also determined that petitioner was ineligible for any relief from removal. As a result, on July 18, 2001, the IJ ordered petitioner removed to Poland.

Petitioner unsuccessfully challenged this determination with the Board of Immigration Appeals ("BIA"). The BIA recognized that "[t]he focus of § 16(a) is on the statutory elements of the offense" and found that "*intentionally* causing injury to another involves the use of force." It then found that petitioner's plea transcript revealed that he had caused injury by striking a person in the head and pushing her to the ground, arguably intentional acts that certainly involved the use of physical force. Therefore, it found that petitioner had been convicted of a crime of violence within the meaning of § 16(a) and thus an aggravated felony under section 101(a)(43)(F) of the INA. The BIA accordingly dismissed petitioner's appeal, thus rendering the order of removal final.

---

[3]Although petitioner was sentenced to a suspended one year sentence, the law expressly states that "[a]ny reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part." 8 U.S.C. § 1101(a)(48)(B).

4

Petitioner then sought relief from the final order of removal by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the District Court. By written memorandum dated July 23, 2002, the District Court denied this petition, finding that "petitioner was convicted of assault because he hit somebody, which constitutes a crime of violence under 18 U.S.C. § 16(a). Because a crime of violence satisfies the definition of aggravated felony under 8 U.S.C. § 1101(a)(43)(F), the petitioner is removable."[4]

This appeal followed.

## Analysis

On appeal from the denial of a habeas petition brought pursuant to 28 U.S.C. § 2241, we review the merits of the petition *de novo*. *See Kuhali v. Reno*, 266 F.3d 93, 99 (2d Cir. 2001). "On review of a removal decision, we owe no deference to the [BIA] in its interpretation of criminal statutes that it does not administer, but grant *Chevron* [*U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984)] deference to the [BIA]'s construction of the INA, which it does administer." *Kuhali*, 266 F.3d at 102 (internal citations omitted). Thus, although we apply *Chevron* deference to the BIA's interpretation of the INA, we review *de novo* the question whether Connecticut's third degree assault statute constitutes a crime of violence under § 16(a). *See Dalton v. Ashcroft*, 257 F.3d 200, 203-04 (2d Cir. 2001) ("We also note that while we apply *Chevron* deference to the BIA's interpretation of the INA, we review *de novo* its interpretation of federal or state criminal statutes. Accordingly, because the INA defines an

---

[4]The Court also found that petitioner was ineligible for discretionary relief from removal under section 212(c) of the INA, as that section existed prior to the 1996 amendments to the immigration laws. Petitioner does not appeal this decision, and thus it is not before us.

5

'aggravated felony' in§ 1101(a)(43)(F) by reference to a 'crime of violence' in 18 U.S.C. § 16,

we review *de novo* the question whether [New York Vehicle and Traffic Law section] 1192.3

constitutes a 'crime of violence' that, in turn, constitutes a deportable 'aggravated felony' under

the INA.") (internal citations omitted).[5]

Pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), "[a]ny alien who is convicted of an aggravated

felony at any time after admission is deportable." "Aggravated felony" is defined at 8 U.S.C. §

1101(a)(43)(F) as "a crime of violence (as defined in section 16 of Title 18, but not including a

purely political offense) for which the term of imprisonment [sic] at least one year." Section 16,

then, defines crime of violence as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force[6] against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16. The parties agree that petitioner's removal is based on § 16(a) and not § 16(b),

as assault in the third degree is a misdemeanor under Connecticut law, *see* Conn. Gen. Stat. §

53a-61(b). Thus, our discussion solely concerns the requirements of § 16(a).

Under the plain language of § 16(a), use of force must be an element of the offense for

------------

[5]Therefore, although the BIA, sitting *en banc*, recently decided the precise question before us, *see In re Martin*, 23 I. & N. Dec. 491 (BIA 2002), this determination warrants no deference, and the government does not argue otherwise.

[6]We will abbreviate, solely for brevity's sake, § 16(a)'s required element as "the use of force" even though the statute encompasses "use of, attempted use of, and threatened use of physical force."

6

that offense to be a crime of violence under § 16(a). For example, the BIA has held that sexual

abuse in the second degree is not a crime of violence under § 16(a) because the "offense does not

involve as an element the use of violent or destructive physical force." *In re Small*, 23 I. & N.

Dec. 448, 449 n.1 (BIA 2002).[7] Although § 16(a) does not define "use of force," "use" means

"[t]he application or employment of something," BLACK's LAW DICTIONARY 1540 (7th ed.

1999), and "force" means "[p]ower, violence, or pressure directed against a person or thing," *id.*

at 656. The word "element" similarly is not defined by statute but has a well-established

meaning in the law. *See id.* at 538 (defining "elements of crime" as "[t]he constituent parts of a

crime . . . that the prosecution must prove to sustain a conviction"). An element of a crime is a

fact that must be proven beyond a reasonable doubt to obtain a conviction. *See Apprendi v. New*

*Jersey*, 530 U.S. 466, 477 (2000) (observing that a criminal defendant is entitled to 'a jury

determination that [he] is guilty of every element of the crime with which he is charged, beyond a

reasonable doubt'") (internal citations omitted and alteration in *Apprendi*); *In re Winship*, 397

U.S. 358, 364 (1970) (holding that "the Due Process Clause protects the accused against

conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

---

[7]*See also United States v. Gracia-Cantu*, 302 F.3d 308, 311-12 (5th Cir. 2002) (finding that crime of injury to a child, which required causation of bodily injury, was not a crime of violence under § 16(a) "because section 22.04(a) of the Texas Penal Code, the statute criminalizing injury to a child, does not require that the perpetrator actually use, attempt to use, or threaten to use physical force against a child. Rather, section 22.04(a) is results-oriented in that the culpable mental state must relate to the result of a defendant's conduct rather than to the conduct itself."); *Francis v. Reno*, 269 F.3d 162, 168 (3d Cir. 2001) ("[Section] 16(a) is narrowly drawn to include only crimes whose elements require the 'use, attempted use, or threatened use' of physical force."). *See generally In re Sweetser*, 22 I. & N. Dec. 709, 1999 WL 311950 (BIA May 19, 1999) ("For a particular offense to be a 'crime of violence' under 18 U.S.C. § 16(a), the elements of the offense must be such that physical force is an element of the crime.").

7

crime with which he is charged").

Petitioner pled guilty to assault in the third degree in violation of section 53a-61 of the

Connecticut General Statutes, which provides, in pertinent part, that:

> A person is guilty of assault in the third degree when: (1) With intent to cause
> physical injury to another person, he causes such injury to such person or to a
> third person; or (2) he recklessly causes serious physical injury to another person;
> or (3) with criminal negligence, he causes physical injury to another person by
> means of a deadly weapon, a dangerous instrument or an electronic defense
> weapon.

Conn. Gen. Stat. § 53a-61(a). Petitioner's judgment of conviction cited generally to section 53a-

61 and did not identify the subsection with which petitioner was charged and to which he pled

guilty. The government does not argue that a conviction under section 53a-61(a)(2) or (3) would

constitute a crime of violence under § 16(a) and therefore support an order of removal. Rather, it

asserts solely that a conviction under section 53a-61(a)(1) for intentional assault in the third

degree constitutes a crime of violence and that petitioner, in fact, was convicted under section

53a-61(a)(1) of intentional assault in the third degree. Because the subsections under section

53a-61(a) differ only on the mens rea requirement, the precise subsection under which petitioner

was convicted is not relevant to the question presented here. We therefore assume for the

purposes of this analysis that petitioner was convicted of intentional assault in the third degree in

violation of section 53a-61(a)(1).[8]  *See Connecticut v. Tanzella*, 628 A.2d 973, 980 (Conn. 1993)

---

[8]The government argues that the District Court was not required to evaluate whether all
forms of criminal conduct proscribed by section 53a-61 constituted crimes of violence but
instead was permitted to consult petitioner's plea transcript for the limited purpose of
determining that the statutory basis for the petitioner's conviction was intentional and not
reckless or negligent assault in the third degree. The petitioner seems to concede that courts may
consult a plea transcript solely to determine under which section of a statute a defendant was

8

(observing that difference between reckless assault and intentional assault is simply one of mental state: "These are not different crimes but simply different means of committing the same crime.").

The Connecticut Supreme Court has held that section 53a-61(a)(1) "require[s] the state to prove that the defendant had intentionally caused physical injury." *Id.*; *see also* Conn. Selected Jury Instructions Crim. § 6.15, http://www.jud.state.ct.us/criminaljury/6-15.html (requiring the state to prove: "(1) that the defendant intended to cause physical injury to another; and (2) that the defendant caused such physical injury to the intended victim or to some third person").

---

convicted, but insists that such inquiry is only permissible when the statute under which the defendant was convicted is divisible, that is, when some part of the statute constitutes a crime of violence under § 16(a) even though other sections do not. Given that use of force is not an element of any of the subdivisions of section 53a-61, petitioner argues, the statute is not divisible because it does not encompass offenses that do and do not constitute crimes of violence, and thus the District Court was not authorized to consult the plea transcript.

In view of our conclusion, discussed *infra*, that intentional assault in the third degree under Connecticut law does not constitute a crime of violence, we need not resolve the parties' dispute concerning the sequence, if any, courts must follow before they may consult a plea transcript for the limited purpose of determining the statutory basis for a given conviction. We note, however, that both parties are correct that the District Court erred to the extent it consulted the transcript of petitioner's plea colloquy to determine that petitioner's conviction was for a crime of violence as defined in § 16(a) through reference to the particular facts supporting petitioner's guilt as opposed to the elements of § 16(a). *See Chrzanowski v. Ashcroft*, No. 3:02CV279, slip op. at 5-6 (D. Conn. July 23, 2002) (finding that, based on the transcript of petitioner's plea, the petitioner was convicted of a crime of violence because "petitioner was convicted of assault because he hit somebody, which constitutes a crime of violence under 18 U.S.C. § 16(a)"). As discussed *infra*, the § 16(a) analysis focuses on the elements of the offense, and district courts are not permitted to consider the specific conduct of the individual in considering whether force was an element of the offense. *Cf. Kuhali*, 266 F.3d at 103 (noting that "in determining whether 'possessing' or 'carrying' firearms is an element of these other crimes, the plain language of INA § 237(a)(2)(C) supports the adoption of a categorical approach that looks to the elements of the offense as defined by statute, rather than to the particular facts of the alien's criminal activity").

9

Connecticut law defines physical injury as "impairment of physical condition or pain." Conn.

Gen. Stat. § 53a-3(3).   Nothing in that definition nor in the language of section 53a-61(a)(1)

requires the government to prove that force was used in causing the injury.  Nor has the

government cited us to any authority indicating that Connecticut courts ever instruct juries that

they must be satisfied beyond a reasonable doubt that force was used in order to convict a

defendant of violating section 53a-61(a)(1).

The government concedes that Connecticut's intentional assault in the third degree statute

does not expressly identify the use, attempted use, or threatened use of physical force as an

element for conviction.  The government argues, however, that force is implicit in the statute's

requirement of the intentional causation of physical injury.[9]  Thus, the government contends,

_____

[9]We assume *arguendo* for purposes of this opinion that it is proper to inquire whether section 53a-61(a)(1)'s element of "intentionally causing physical injury" necessarily entails use of force even though use of force is not a statutorily defined element of third degree intentional assault.  *Cf. Kuhali*, 266 F.3d at 104-05 (determining whether possession of firearms was an implicit element of conspiracy to export firearms by asking whether the definition of export, a listed element, necessarily entails some degree of possession).  *See generally United States v. Dillard*, 214 F.3d 88, 92 (2d Cir. 2000) (noting that the definition of crime of violence in the Bail Reform Act context, requiring that the offense have the element of the use, attempted use, or threatened use of physical force against the person or property of another, "covers offenses that fall within the conventional notion of a crime of violence--any offense of which an element actually *involves* the use or threat of force") (emphasis added), *cert. denied*, 532 U.S. 907 (2001).

The government cites cases from other circuits, which were relied on by the BIA in ordering Chrzanoski's removal, to support its argument that the use of physical force is an inherent element of intentional assault under Connecticut law.  *See, e.g., United States v. Nason*, 269 F.3d 10, 20 (1st Cir. 2001) (finding that a statute requiring proof of the causation of bodily injury "unambiguously involves the use of physical force"); *United States v. Ceron-Sanchez*, 222 F.3d 1169, 1173 (9th Cir. 2000) (finding that a statute requiring the causation of physical injury to another thereby required either the use, attempted use, or threatened use of force against the person of another); *United States v. Smith*, 171 F.3d 617, 621 & n.2 (8th Cir. 1999) (concluding that an offense that required proof of an intent to cause pain, injury, or offensive or insulting

10

even though section 53a-61(a)(1) lacks an explicit textual reference to physical force, it imposes "an equivalent requirement that a defendant intend to cause physical injury."

Petitioner responds that there is a "difference between the causation of an injury and an injury's causation by the 'use of physical force.'" We agree. In *Dalton*, we considered whether a New York state felony conviction for operating a vehicle while intoxicated was a crime of violence under § 16(b).[10]  257 F.3d at 202-03.  In holding that not all violations of the New York statute are by their nature, in the words of § 16(b), crimes of violence, we rejected the government's argument that there is a negligible difference between risk of injury and risk of the use of physical force:

> While it may be true that all driving involves some risk of an accident and drunk driving increases that risk, upon closer examination, this reasoning begs the question of whether an accident is something that can be referred to as involving the "use of physical force." Such an argument equates the use of physical force with harm or injury, thus returning the inquiry to the question of whether there is any material difference between the risk of the "use of physical force" and the "risk of injury."
>
> . . . There are many crimes that involve a substantial risk of injury but do not involve the use of force. Crimes of gross negligence or reckless endangerment, such as leaving an infant alone near a pool, involve a risk of injury without the use of force. Statutes criminalizing the use, possession and/or distribution of

---

contact included an element of physical force within the meaning of 18 U.S.C. § 921(a)(33)(A)(ii) because "such physical contact, by necessity, requires physical force to complete"). *Id.* at 496-99. To the extent these cases lend support to the government's argument that use of force is an implicit element of Connecticut's third degree assault statute, we do not find them persuasive, for the reasons discussed *infra*.

[10]As recited above, § 16(b) defines a crime of violence as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," 18 U.S.C. § 16(b), and, unlike § 16(a), does not require that an element of the offense be the use of force.

11

dangerous drugs and other controlled substances also underscore the fact that
some criminal conduct may involve a substantial risk of injury or harm without at
the same time involving the use of physical force. Other courts have also
recognized the logical fallacy inherent in reasoning that simply because all
conduct involving a risk of the use of physical force also involves a risk of injury
then the converse must also be true.

*Id.* at 207 (citations and internal footnote omitted).[11]

---

[11]In *Dalton*, we also analogized to a 1989 amendment to the Sentencing Guidelines to
support further our rejection of the government's argument that there is little difference between
the risk of injury and the risk of the use of physical force:

> The United States Sentencing Guidelines recognized the difference between "use
> of force" and "injury" when it broadened the scope of its definition for "crimes of
> violence" under the career offender provision in § 4B1.2(a)(2). Before 1989, §
> 4B1.2(a)(2) referred to 18 U.S.C. § 16 for its definition of a "crime of violence."
> In 1989, the Sentencing Guidelines removed the reference to § 16 and instead
> defined a "crime of violence" by its resultant injury rather than by the use of force.
> The current version of § 4B1.2(a)(2) provides:
>
> > (a) The term "crime of violence" means any offense under federal or state
> > law, punishable by imprisonment for a term exceeding one year, that--
> >
> > . . .
> >
> > (2) is burglary of a dwelling, arson, or extortion, involves use of
> > explosives, or otherwise involves conduct that presents a serious potential
> > risk of physical injury to another.
>
> We agree with the Fifth Circuit that this change counsels against interpreting "risk
> of the use of physical force" and "risk of injury" the same way.

*Id.* at 207 (internal citations omitted).

We further note that the BIA has recognized, also in the § 16(b) risk of injury context,
that while "[c]riminal offenses that carry a substantial risk that force will be used also share the
potential to result in harm . . . [,] offenses that have the potential for harm do not always carry a
substantial risk that force will be used in their commission." *In re Puente-Salazar*, 22 I. & N.
Dec. 1006, 1999 WL 770709 (BIA Sept. 29, 1999), *overruled on other grounds by In re Ramos*,
23 I. & N. Dec. 336 (BIA 2002).

12

Although our analysis in *Dalton* did not concern § 16(a), its discussion of the difference between conduct that risks the causation of physical injury and conduct that requires the use of physical force is relevant here. We find that just as risk of injury does not necessarily involve the risk of the use of force, the intentional causation of injury does not necessarily involve the use of force. *See Persaud v. McElroy*, 225 F. Supp. 2d 420, 421 (S.D.N.Y. 2002) (concluding that "a conviction under N.Y.P.L. § 120.05(6) is not a 'crime of violence' under 18 U.S.C. § 16(a), because a conviction under N.Y.P.L. § 120.05(6), while requiring proof of physical injury, does not require, as an element of the offense, that the defendant *use* physical force to inflict that injury"). Given the elements of section 53a-61(a)(1) under Connecticut law, it seems an individual could be convicted of intentional assault in the third degree for injury caused not by physical force, but by guile, deception, or even deliberate omission. Certainly, Connecticut recognizes that even second degree assault, which qualifies as a Class D felony, can be committed without any physical force. *See State v. Nunes*, 800 A.2d 1160, 1164 & n.2 (Conn. 2002) (affirming conviction for assault in the second degree, which requires, *inter alia*, that the defendant "intentionally cause[] stupor, unconsciousness or other physical impairment or injury to another person," based on the defendant's placement of a tranquilizer in the victim's drink). In the exercise of prosecutorial discretion, the same non-forceful conduct at issue in *Nunes* could presumably be charged as the lesser included offense of third degree assault. Moreover, human experience suggests numerous examples of intentionally causing physical injury without the use of force, such as a doctor who deliberately withholds vital medicine from a sick patient. In sum, while there are undoubtedly many ways in which force could be used to commit third degree

13

assault under Connecticut law, the plain language of the statute does not make use of force an

explicit or implicit element of the crime. Rather, its language is broad enough to cover myriad

other schemes, not involving force, whereby physical injury can be caused intentionally.

The government attempts to avoid the clear language of § 16(a) requiring that use of force

is an element of the crime by citing to legislative history, an argument that the BIA found

persuasive in *In re Martin*, 23 I. & N. Dec. 491 (BIA 2002) (en banc).[12] But § 16(a) is

unambiguous on its face that use of force must be an element of the crime, and as the Supreme

Court recently stated, "reference to legislative history is inappropriate when the text of the statute

is unambiguous." *Dep't of Housing & Urban Dev. v. Rucker*, 535 U.S. 125, 122 S. Ct. 1230,

1234 (2002).

We reject the government's invitation to ignore the plain meaning of "force," as the

government has failed to demonstrate that the plain meaning is absurd, futile, or merely

unreasonable and plainly at variance with the policy of the INA. *See United States v. Am.*

*Trucking Ass'ns.*, 310 U.S. 534, 543 (1940).[13] The government at oral argument was

---

[12]*Martin* also concerned a conviction under section 53a-61(a)(1) for intentional assault in the third degree. The BIA affirmed the order of the immigration judge finding the petitioner removable based on his commission of an aggravated felony, to wit, a crime of violence under § 16(a). It found, *inter alia*, that the legislative history of § 16(a) provides explicit support for its conclusion that an assault involving the intentional infliction of physical injury has as an element the use of physical force within the meaning of § 16(a). *Id.* at 494.

[13]We note that Connecticut's highest court has recently rejected the "plain meaning" rule of statutory construction. *See State v. Courchesne*, No. 16665, 2003 WL 734251, at *13 (Conn. March 11, 2003) ("[I]n performing the process of statutory interpretation, we do not follow the plain meaning rule in whatever formulation it may appear."). However, this does not control our analysis of 18 U.S.C. § 16(a), even though the underlying offense is one of Connecticut state law.

14

undoubtedly correct in arguing that Congress's intent in drafting § 16 was to expand the list of crimes that constitute aggravated felonies and thus subject alien defendants to removal. This general intent, however, presents us with no reason to ignore the deliberate structure through which Congress chose to accomplish this task. Through § 16(b), Congress sought to classify as crimes of violence felonies that, by their nature, involve a substantial risk that physical force against the person or property of another may be used. It did not require that felonies have as an element of the offense the use of force. But when Congress considered which misdemeanors should be deemed crimes of violence, and thus aggravated felonies under the INA, it chose a materially different definition. Namely, as discussed above, Congress elected to reach only those misdemeanors that have as an element the use of force against the person or property of another. Through this structure, Congress chose to apply a less restrictive definition of crime of violence to felonies than to misdemeanors, and our analysis is faithful to this policy decision. Thus, rather than being at variance with Congress' intent, our interpretation of § 16(a) honors Congress' intent to expand the list of crimes that constitute aggravated felonies by defining as crimes of violence only those misdemeanors that include as an element the use of force.

Our decision not to ignore the plain language of § 16(a) is particularly appropriate in this case, given the serious consequences of a decision to find this crime a removable crime of violence. As we recently recognized:

> We are reminded here of what the Supreme Court said years ago in the context of interpreting an immigration law providing for deportation on the basis of crimes of moral turpitude:
>
> > [D]eportation is a drastic measure and at times the equivalent of banishment or exile. It is the forfeiture for misconduct of a residence in

15

> this country. Such a forfeiture is a penalty. To construe this statutory
> provision less generously to the alien might find support in logic. But
> since the stakes are considerable for the individual, we will not assume
> that Congress meant to trench on his freedom beyond that which is
> required by the narrowest of several possible meanings of the words used.

*Dalton v. Ashcroft*, 257 F.3d 200, 208 (2d Cir. 2001) (quoting *Fong Haw Tan v. Phelan*, 333

U.S. 6, 10 (1948) (citation omitted in original)); *see also Francis v. Reno*, 269 F.3d 162, 170 (3d

Cir. 2001) (finding its interpretation of § 16 "consistent with the rule of lenity as embodied in

'the longstanding principle of construing any lingering ambiguities in deportation statutes in

favor of the alien.'") (citation omitted).

Thus, because use of force is not an element (whether statutorily defined or otherwise) of

section 53a-61(a)(1), we conclude that third degree intentional assault under Connecticut law is

not a crime of violence under § 16(a). Because the INS premised its authority to order petitioner

removed on its determination that intentional assault in the third degree was a crime of violence

under § 16(a), it committed legal error, and the petition for a writ of habeas corpus should have

been granted.

### Conclusion

For the reasons stated above, we reverse the judgment of the District Court and remand

the case with directions to grant the petition. The mandate shall issue forthwith.

16